327 S.E.2d 160

**John Stanley NUTTER**

v.

**Antoinette NUTTER.**

**No. 16051.**

Supreme Court of Appeals of West Virginia.

March 8, 1985.

son County which denied her alimony in a divorce proceeding. The court had previously granted Mr. Nutter a divorce on the ground that he had lived separate and apart from his wife for more than one year. On appeal, Mrs. Nutter contends that the trial court erred in failing to award her alimony. We agree, and we reverse the judgment of the Circuit Court of Jackson County.

Mr. and Mrs. Nutter were married on September 18, 1950. They lived together from that time until August 20, 1977, when Mr. Nutter left the marital residence to reside elsewhere. On August 24, 1977, Mrs. Nutter instituted an action for separate maintenance in the Circuit Court of Jackson County, the county in which she and her husband had resided. Mr. Nutter filed an answer to the petition and counterclaimed for divorce. Initially, Mrs. Nutter, for religious reasons, resisted the granting of a divorce. Later at a hearing conducted on July 17, 1978, before a divorce commissioner, she orally amended her complaint and requested a divorce on the ground of cruelty. On October 27, 1978, an order was entered by the Circuit Court of Jackson County granting Mrs. Nutter's prayer and ordering that Mr. Nutter pay her alimony.

Subsequently, Mrs. Nutter moved that the divorce order be declared null and void. She alleged that the commissioner had erred in accepting the oral amendment to the complaint. After conducting a hearing, the circuit court set aside the October 27, 1978 order and invalidated the Nutters' divorce.

On June 26, 1979, Mr. Nutter again filed a complaint for divorce. He alleged that the parties had lived separate and apart for one year. Mrs. Nutter answered the complaint and, apparently for religious reasons, denied the allegation that the couple had been voluntarily separated for one year. She also filed a counterclaim seeking support, but no divorce. In the counterclaim, she maintained that her husband had been guilty of mental cruelty and desertion. A hearing was held on the complaint, answer, and counterclaim on October 18,

Gregory J. Campbell, Charleston, for appellant.

R.P. Duranti, Jr., Ravenswood, for appellee.

PER CURIAM:

This is an appeal by Antoinette Nutter from an order of the Circuit Court of Jack-

1979, before a special commissioner. The commissioner, on November 27, 1979, recommended that a divorce be granted on the ground that the parties had lived separate and apart for more than one year. The commissioner also recommended that further hearings be conducted on the question of alimony.

On January 21, 1980, the court adopted the commissioner's recommendations and entered an order granting Mr. Nutter a divorce. A ruling on Mrs. Nutter's prayer for support or alimony was suspended until additional hearings could be conducted before a commissioner.

Evidentiary hearings on the alimony question were held by a commissioner on June 17, July 17, and July 31, 1980. At the conclusion of the hearings, the commissioner recommended that Mrs. Nutter be denied alimony. The commissioner's report indicated that Mr. Nutter was employed at Kaiser Aluminum and Chemical Corporation, had a weekly gross income of $347.90, and a net take-home income of $240.02 per week. The report stated that Mrs. Nutter did not have a full-time occupation, but did part-time work as a cake decorator and had an income of approximately $400 per year from that work. Additionally, the commissioner found that Mrs. Nutter received rent of $125 per month from a house located at 1102 Gallatin Street, Ravenswood, West Virginia, and resided in a house located at 1100 Gallatin Street, Ravenswood, without paying any rent.

The commissioner noted that Mr. Nutter was in fair to poor health and was under treatment for ulcers and had been under such treatment for fifteen years. He had been hospitalized on numerous occasions for this condition. Mrs. Nutter was also in fair to poor health and had varicose veins and other problems. At the time of the divorce, Mr. Nutter was fifty-three years old, and Mrs. Nutter was fifty-four years old. The parties had three children, all of whom were adults.

The commissioner also found that there was evidence of misconduct on the part of Mrs. Nutter, which constituted a bar to her right to receive alimony. The evidence to which the commissioner referred was apparently testimony which indicated that Mrs. Nutter had often bickered with Mr. Nutter. Mr. Nutter's testimony was that she harassed him. When asked how she harassed him, he testified that she constantly left him notes and that "[s]he cussed me from daylight to dark and ran around the house hollering." She also accused him of having an affair and, according to Mr. Nutter, there was something wrong with everything he bought. According to Mr. Nutter, Mrs. Nutter continuously accused him of failing to provide her with things and with failing to treat her as a concerned husband should.

Mrs. Nutter filed exceptions to the commissioner's report, but the circuit court adopted the commissioner's findings and on September 8, 1982, entered an order denying her alimony.

■ In her brief, Mrs. Nutter argues that the Circuit Court of Jackson County ignored the principles set out in *F.C. v. I.V.C.*, 171 W.Va. 458, 300 S.E.2d 99 (1982), in denying her alimony on the basis of fault. In Syllabus Point 1 of *F.C. v. I.V.C.*, we specifically said:

"Alimony may be awarded under W.Va. Code, 48-2-4(a)(7) against a 'faultless' party if 'principles of justice' so require, considering the financial needs of the parties and other factors listed in Code, 48-2-16."

■ In *Peremba v. Peremba*, 172 W.Va. 393, 304 S.E.2d 880 (1983), we noted that *F.C. v. I.V.C.* recognized that even in consensual divorces, consideration might be given to the inequitable conduct of one party in determining what is a just and equitable alimony award. We said in Syllabus Point 1 of *Peremba*:

"When alimony is sought under *W.Va. Code*, 48-2-4(a)(7), the court may consider substantial inequitable conduct on the part of the party seeking alimony as one factor in its decision. Substantial inequitable conduct is conduct which the trier of fact may infer caused the dissolution of the marriage."

In the case presently before us, the evidence is not one-sided when taken as a whole. It reveals that both parties engaged in long-term bickering. Mr. Nutter indicated that on occasion he did engage in arguments and he admitted that on one occasion he became so angry he even broke a fluorescent light bulb. The parties' children testified that both parties were involved in the bickering. Edward Dwayne Nutter, one of the parties' sons, testified that he saw his father throw a chair at his mother on one occasion. John D. Nutter, another son, indicated that both parties were at fault, but that his mother was perhaps more blameworthy than his father.

We believe that from the record, it is impossible to identify precise conduct on the part of either party which caused the dissolution of the marriage. The inference which arises from the record is that there was domestic discord and bickering to which both parties contributed. This domestic discord was the cause of the dissolution of the marriage.

■ We do not believe that it is possible to infer from the record that the misconduct of Mrs. Nutter was such substantial inequitable conduct that the court may infer that it independently caused the dissolution of the marriage. To foreclose an award of alimony to an impecunious spouse under *Peremba*, fault must be shown under W.Va.Code, 48–2–4(a)(7). That fault must be so substantially inequitable that the trier of fact can infer from it that it caused the dissolution of the marriage.

In *Crutchfield v. Crutchfield*, 172 W.Va. 7, 302 S.E.2d 76 (1983), we considered a case similar to the one now before us. In that case, the appellant wife was fifty-six years of age and the husband was sixty-six years old. They had been married in 1951 and had lived together until 1979. The appellant wife had a very limited income and the husband had considerable real property and approximately $17,000 per year income. The trial court concluded that because the appellee husband was not at fault in the dissolution of the marriage, alimony could not be awarded against him. We reversed the trial court's decision and

reiterated the rule set forth in *F.C. v. I.V.C.*, that the concrete financial realities of the parties must be the court's primary inquiry in determining whether there should be an alimony award.

■ In the case before us, we believe that the trial court erred in denying Mrs. Nutter alimony because of the finding of fault. We also believe that the financial evidence adduced in the case is that the appellant is in need of alimony and that Mr. Nutter is financially capable of paying such alimony. Although the record indicates that both parties are in only fair to poor health, it indicates that Mr. Nutter is gainfully employed and for virtually his whole married life has been gainfully employed. He has a net take-home income of approximately $12,000 a year. Mrs. Nutter, on the other hand, has not been employed outside the home since the marriage and has an income of only $400 a year from cake decorating and $1500 a year from rents. It does not appear that Mrs. Nutter, because of her age and her long absence from the employment market, has any meaningful prospects of becoming gainfully employed. In short, we conclude that the realities of this case indicate that the trial court erred in failing to award Mrs. Nutter alimony.

We, therefore, reverse the final order of the Circuit Court of Jackson County and remand this case with directions that the court reconsider its alimony ruling in light of the principles expressed in *F.C. v. I.V.C.*

Reversed and Remanded.