575 S.E.2d 292

**John E. PORTER, Jr., Plaintiff Below, Appellee,**

v.

**Pebble I. PORTER, Defendant Below, Appellant.**

**and**

**John E. Porter, Jr., Petitioner Below, Appellant,**

v.

**Pebble I. PORTER, Respondent Below, Appellee.**

Nos. 29333, 30529.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2002.

Decided Dec. 3, 2002.

---

Delby B. Pool, Esq., Clarksburg, WV, for John E. Porter, Jr.

Randal A. Minor, Esq., J. Breckinridge Martin, Student Attorney, West Virginia University College of Law, Morgantown, WV, for Pebble I. Porter.

PER CURIAM.

This proceeding involves cross-appeals by the parties to a divorce, Pebble I. Porter and John E. Porter, Jr. In her appeal, Pebble I. Porter claims that the Circuit Court of Marion County erred in rejecting a recommendation of the family law master that she receive permanent alimony. The circuit court instead ruled that she was entitled to rehabilitative alimony for the period of two years. In his appeal, John E. Porter, Jr. claims that the circuit court erred in rejecting the family law master's recommended distribution of marital property and in awarding Pebble I. Porter more than suggested by the family law master.

## I.

### FACTS

The parties, Pebble I. Porter and John E. Porter, Jr., have a rather complicated marital history. They were married on March 23, 1975. They remained married for over ten years, but were divorced on December 3, 1985.

Shortly after their divorce, the parties, in August 1986, again commenced living together, and while living together, they raised their child who had been born prior to their divorce. Some years later, in May 1996, they separated. However, they soon resumed living together, and in September 1997, they

remarried. Subsequently, in February 2000, John E. Porter, Jr. instituted the divorce proceeding which gives rise to the present appeals.

A family law master took extensive evidence in the divorce proceeding and recommended that the divorce be granted and made a number of other recommendations. One recommendation, which is in issue on appeal, was that Pebble I. Porter receive $886 per month in permanent alimony, an amount which equaled approximately one-half of John E. Porter, Jr.'s monthly take-home income. John E. Porter, Jr. took exception to this alimony recommendation, and the circuit court subsequently concluded that it was arbitrary and capricious, in part, because of the brevity of the parties' second marriage. The court also concluded that the family law master's recommendation was tantamount to a recommendation of palimony, which is proscribed under West Virginia law. In lieu of the family law master's recommendation, the court ruled that Pebble I. Porter was entitled to rehabilitative alimony of $1,000 per month for two years.

The family law master also recommended, with one exception, that Pebble I. Porter receive as marital distribution one-half of property acquired only during the parties' second marriage.[1] The circuit court later rejected this recommendation and found that the parties implicitly held themselves out as married and that John E. Porter, Jr., by his behavior, created a reasonable expectation by Pebble I. Porter that she would share in the parties' financial resources accumulated during cohabitation. On the basis of this, the circuit court concluded that, under general equitable principles, rather than under statutory equitable distribution principles, Pebble I. Porter should receive a one-half interest, *not only in assets accumulated by John E. Porter, Jr. during the second marriage, but also in assets acquired during the period of cohabitation between marriages.*

In the present cross-appeals, Pebble I. Porter claims that the circuit court erred in rejecting the family law master's recommen-

dation that she receive $886 a month in permanent alimony. John E. Porter, Jr., on the other hand, claims that factually the parties did not hold themselves out as married during the period of the cohabitation between their first divorce and the second marriage, and that the circuit court erred in ordering division of resources which he acquired during that period.

## II.

### STANDARD OF REVIEW

█ In Syllabus Point 1 of *Magaha v. Magaha,* 196 W.Va. 187, 469 S.E.2d 123 (1996), this Court indicated that in divorce cases: " 'This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*' Syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996)."

## III.

### DISCUSSION

█ In the present cross-appeals, the first issue is whether Pebble I. Porter is correct in asserting that the circuit court erred in substituting a rehabilitative alimony award for the permanent alimony recommended by the family law master.

From the record, it is clear that the circuit court, in rejecting the family law master's recommendation, was concerned about the law relating to palimony in West Virginia. The court stated: "The period of time in which they lived together as husband and wife but were not married, if I grant alimony based upon that period, I am doing indirectly that which I can't do directly, because this is not a state where you can award palimony. And I would be basically awarding palimony by awarding to your client any monies for the period of time in which she was not married to the individual. I can only award

---

1. The one exception is that the family law master recommended that Pebble I. Porter receive one-half of John E. Porter, Jr.'s pension benefits accumulated during the parties' first marriage. That issue will be discussed separately at the end of this opinion.

alimony during the period in which they were married." The court also said:

> Counsel, I'm going to make a finding, there being no finding of fault; the marriage being seventeen (17) months; no credit for the period of time in which they were not married, just living together; based upon the parties' income; the need for retraining, reschooling the defendant; the health of the parties; the financial worth of the parties; the Court finds that the decision of the Family Law Master was arbitrary and capricious and not based upon the statutory case law and will award alimony for a period of two (2) years in the sum of one thousand dollars ($1,000.00) per month....

■ West Virginia's prohibition against the payment of palimony is rooted in the language of what was designated as W. Va. Code 48–2–32(k) at the time of the proceedings before the lower court.[2] That statute provides: "A court may not award alimony or order equitable distribution of property between individuals who are not married to one another in accordance with the provisions of article one [§ 48–1–1 et seq.] of this chapter." The statute, in effect, provides that there can be no award of alimony when the parties before the court have not been formally married.

Other provisions in the law govern the award, and amount, of alimony where the parties have actually been formally married, as is the situation in the present case. The length of time the parties have been married is only one of many factors in such a situation. W. Va. Code 48–2–16.

The Legislature has imposed upon the family law master the duty of making findings of fact and conclusions of law relating to awards of alimony, and the Legislature has specifically required circuit courts to follow family law masters' recommendations unless the court concludes that such recommendations are:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in conformity with the law; (2) Contrary to constitutional right, power, privilege or immunity; (3) In excess of statutory jurisdiction, authority or limitations or short of statutory right; (4) Without observance of procedure required by law; (5) Unsupported by substantial evidence; or (6) Unwarranted by the facts.

W. Va. Code 48A–4–20(c).

The record in the present case shows that the family law master, in reaching the conclusion that Pebble I. Porter was entitled to $886 per month in permanent alimony, considered the factors specified by the Legislature in W. Va. Code 48–2–16. Among other things, the family law master significantly noted that John E. Porter, Jr. had more education than Pebble I. Porter, that he had vastly greater earnings, and that Pebble I. Porter had no significant, usable, employment skills. The family law master stated: "It is doubtful that many prospective employers will consider hiring a 58–year–old woman for an entry level position. Respondent [Pebble I. Porter] testified that since the parties' separation, she has looked for suitable employment without success."

The circuit court, in rejecting the family law master's ultimate recommendation, was apparently swayed by the belief that the recommendation was contrary to the law because of West Virginia's palimony statute.

■ As has previously been stated, the palimony statute applies when the parties before the court have not been formally married. That is not the situation in the present case. The parties were formally married, and were married when the present divorce proceeding was instituted. Where the parties have been formally married, an award of alimony may be appropriate, and while the length of marriage is one of the factors which may be considered in setting the amount of alimony, it is only one of many, and not the exclusive factor. In the present case, the

---

**2.** Subsequent to the institution of the present divorce action, West Virginia's divorce law was recodified, and the statutes referred to in this opinion have been renumbered. For instance, W. Va. Code 48–2–32(k), is now W. Va. Code 48–7–111. Some language changes were also made. For instance, alimony is now "spousal support," but none of the changes are material to, or affect, the outcome of this case.

family law master, rather clearly, considered, and based the recommendation on, the panoply of factors.

This Court has examined the findings and conclusions of the family law master relating to alimony and believes that they are based on the facts and the law and, in light of the overall circumstances of the case, cannot say that they are arbitrary or otherwise defective as contemplated by W. Va.Code 48A–4–20(c). Consequently, the Court believes that the circuit court's decision should be reversed and that the recommendation of the family law master relating to alimony should be adopted.

■ The second issue in this case is the correctness of the equitable distribution ruling.

As has previously been discussed, the family law master concluded that equitable distribution of assets acquired while the parties were unmarried between marriages was not appropriate. The circuit court overruled this on the theory that the parties had held themselves out as husband and wife while not married and that under the particular circumstances, an even distribution of the acquired property could be made, not under the rules of statutory equitable distribution, but under general equitable principles.

The fundamental factual predicate of the circuit court's equitable award was the court's conclusion that the parties held themselves out to be married during the period when they were not actually formally married.

This Court has examined the record, and although there was conflicting testimony as to how the parties acted when they were not formally married, there was very substantial evidence showing that contrary to how the parties behaved when married, their conduct when unmarried was very much that of separate individuals. In particular, they had separate checking accounts; each retained money that he or she earned while living together but unmarried; and each bought assets separately and titled them in separate names while they were living together unmarried. They did not pool their assets to buy property. Further, John E. Porter, Jr. paid all utilities and household expenses when they lived together unmarried, where-

as once they were married the second time, he put Pebble I. Porter's name on his checking account, and they jointly paid expenses from that account.

This Court believes that this evidence does not support the circuit court's conclusion that the parties held themselves out as married during their unmarried cohabitation and that the predicate for the court's equitable award was missing. Under such circumstances, the circuit court, under the principles set forth in W. Va.Code 48A–4–20(c), should have adopted the family law master's recommendation, except on one point. That one point involves the pension benefits accumulated by John E. Porter, Jr. during the parties' first marriage mentioned in footnote 1, *supra.*

The family law master suggested that the court in the parties' first divorce proceeding had failed to make distribution of John E. Porter, Jr.'s pension and recommended that Pebble I. Porter receive a share of what was accumulated during the first marriage. The circuit court rejected this recommendation on the ground that the first divorce was final and that the questions resolved by it were settled and could not be reopened. This Court believes that the circuit court's ruling on this point was absolutely correct. *See, e.g., Martin v. Martin,* 187 W.Va. 372, 419 S.E.2d 440 (1991); *Segal v. Beard,* 181 W.Va. 92, 380 S.E.2d 444 (1989); and *Caldwell v. Caldwell,* 177 W.Va. 61, 350 S.E.2d 688 (1986).

## IV.

### CONCLUSION

For the reasons stated, the orders of the Circuit Court of Marion County, relating to alimony and marital distribution, are reversed, and this case is remanded with directions that the circuit court award Pebble I. Porter permanent alimony in line with the family law master's recommendation and make marital distribution only of the property acquired by the parties during their second marriage.

Reversed and remanded with directions.