575 S.E.2d 628

Brenda Sue GOOCH, Petitioner
Below, Appellee,

v.

Timothy D. GOOCH, Respondent
Below, Appellant.

No. 30528.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 8, 2002.

Decided Dec. 2, 2002.

William L. Frame, Esq., Wilson, Frame, Benninger & Metheney, Morgantown, for Appellee.

Delby B. Pool, Esq., Clarksburg, for Appellant.

PER CURIAM:

The appellant appeals from a divorce order of the Marion County Circuit Court that adopted various family law master recommendations. The appellant challenges the order on the circuit court's distribution of marital assets, the award of rehabilitative alimony, and the parenting plan. We affirm the lower court's ruling.

I.

The appellant Timothy D. Gooch and the appellee, Brenda Sue Gooch, were married on December 8, 1984. Before their marriage, Brenda received training as a dental office assistant, but worked as a telephone solicitor because she could earn a higher income. Timothy was an electrician by trade. Several months prior to their marriage, the couple incorporated Northern Mountain State Metals, Inc., a scrap metal business.

During their marriage, Timothy and Brenda had two children. After their second child was born, Brenda quit working outside the home while Timothy continued to work as an electrician and also ran the scrap metal business.

The parties separated in December of 1999. At the time of their separation, Brenda was a homemaker and not otherwise employed. Timothy managed the parties' jointly-owned scrap metal business and earned $67,080.00 from the business in 1999. Beginning in December of 2000 and continuing through the final hearing in January of 2001, Timothy's earnings from the scrap metal business dropped to $48,000.00 per year.

On December 21, 1999, Brenda filed for divorce and a temporary hearing was held on May 25, 2000. At the hearing, Family Law Master ("FLM")[1] David P. Born offered Timothy two *pendente lite* options. Timothy could either pay child support of $250.00 twice a month plus the household bills, or he could pay alimony in the amount of $1,700.00 per month. Timothy chose the former option and the FLM incorporated the agreed-to obligation into a *pendente lite* order.

The *pendente lite* order was entered on June 9, 2000. In the order, the FLM ordered Timothy to make payments on all of the household bills including the house payment, car payment, insurance, utilities, and the uninsured medical expenses of Brenda Gooch and the children. Additionally, he was ordered to pay $250.00 twice monthly as child support for the couple's two children.

On March 15, 2001, Timothy filed a motion to modify the *pendente lite* order because the parties' son had begun to reside with Timothy. Following a May 18, 2001 hearing, the FLM entered a "Supplemental Temporary Order" on June 14, 2001, ordering the appellant to pay $278.00 per month in child support.

1. Effective January 1, 2002, family law masters were replaced by family court judges. *See West* *Virginia Constitution*, Article VIII, § 16; *W.Va. Code*, 51–2A–1 to –23 [2001].

Although it is unclear from the record as to the dates that pleadings and subsequent orders were entered, it is clear that after several hearings, the FLM made findings of facts, conclusions of law, and entered a recommended final decree on June 18, 2001. In the order, the FLM recommended that the parties be divorced on the grounds of irreconcilable differences and that their assets and debts be equitably distributed. The FLM proposed that the appellee receive marital property with a net value of $236,703.15 and that the appellant receive marital property with a net value of $458,629.70, including commercial property holdings that earned more than $25,000.00 a year in rentals. To achieve equitable distribution, the FLM recommended that the appellant pay the appellee $110,963.26. The FLM also awarded the appellee $500.00 a month in rehabilitative alimony for five years and her attorney fees and costs. The FLM further ordered that the appellant pay child support of $278.00 per month and that custodial and parenting responsibilities be assigned according to the plan proposed by appellee.

The appellant filed a petition for review of the FLM's recommended order. The circuit court denied the relief requested by the appellant, adopted the FLM's recommended final order, and issued a final decree. It is the circuit court's final decree that this Court now addresses.

## II.

■ This Court has previously stated a three-pronged standard for reviewing the findings of family law masters that are adopted by circuit courts.

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.

Syllabus Point 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

■ With regard to alimony, this Court has stated that:

Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.

Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977).

■ In the instant case, the appellant argues that the circuit court erred in the distribution of assets because the FLM and the circuit court failed to credit the appellant for the payments that he made while the case was pending and because the FLM and the circuit court erred in valuing the business' home office furniture and in mistakenly labeling an $8,500.00 personal loan as a business debt. In addition, the appellee complains that he is unable to pay the $110,963.26 ordered to satisfy the equitable distribution of marital assets.

The appellant complains that he did not receive appropriate credit for payments that he made during the pendency of this matter. *W.Va.Code,* 48–2–13(a)(8) [1999][2] provides discretion to the FLM in how to designate payments made to third parties during the pendency of the case. Under *W.Va.Code,* 48–2–13(a)(8) [1999], absent a designation by the FLM, payments made to third parties, during the pendency of the divorce action, are deemed to be alimony. Therefore, having reviewed the record, we find that the FLM did not err in the manner in which the

2. *W.Va.Code,* 48–2–13(a)(8) [1999] states in pertinent part that:

The court may require payments to third parties .... [w]hen such third party payments are ordered, the court shall specify whether such payments or portions of payments are temporary alimony, temporary child support, a par-

tial distribution of martial property or an allocation of marital debt: Provided, That if the court does not set forth in the order that a portion of such payments is to be deemed temporary child support, then all such payments made pursuant to this subdivision shall be deemed to be temporary alimony[.]

appellant was credited for payments that the appellant made during the pendency of the matter.

■ The appellant also argues that the circuit court erred in failing to set aside the family law master's recommendation regarding the valuation of company-owned home office furniture and an $8,500.00 loan. Based on our standard of review, we cannot find that the circuit court was clearly erroneous in its valuing of the disputed home office furniture or in its allocation of the $8,500.00 loan as a business debt. Therefore, having reviewed the circuit court's findings and conclusions, we find that the circuit court did not abuse its discretion in dividing the marital assets and debts.[3]

■ Next, the appellant argues that the circuit court erred in awarding the appellee rehabilitative alimony. "The concept of 'rehabilitative alimony' generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained." Syllabus Point 1, *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984). In Syllabus Point 3 of *Molnar*, we indicated that:

> There are three broad inquiries that need to be considered in regard to rehabilitative alimony: (1) whether in view of the length of the marriage and the age, health, and skills of the dependent spouse, it should be granted; (2) if it is feasible, then the amount and duration of rehabilitative alimony must be determined; and (3) consideration should be given to continuing jurisdiction to reconsider the amount and duration of rehabilitative alimony.

In the present case, the appellee expressed a desire to become self-sufficient and capable of supporting herself and her children. To achieve such independence, the appellee plans to attend college and obtain a four-year degree. The FLM considered the appellee's desire to attend college, her age, relative skill level, and the length of the marriage. The FLM then granted the appellee rehabilitative alimony for five years. Having reviewed the record, we find that the court did not abuse its discretion in awarding the appellee rehabilitative alimony.

■ Finally, the appellant argues that the circuit court erred in adopting the parenting plan known as the "Supplement Memorandum of Understanding" and that the FLM and the circuit court erred in not adopting Timothy's proposed parenting plan. The parties unsuccessfully attempted mediation on parenting; nevertheless, the parties' mediator issued an unsigned "Memorandum of Understanding" and a "Supplemental Memorandum of Understanding."

The "Supplemental Memorandum of Understanding" formed the basis of the FLM's recommended parenting plan. Specifically, the plan recommended by the FLM and adopted by the circuit court provides for a "split custody" arrangement in which the appellee would be the primary custodian of their daughter, and the appellant would be the primary custodian of their son. The parties would alternate weekday evenings with the children so the children would have time together during the week, and the parties would alternate weekend custody so that the children could be together on the weekends.

Having reviewed the Supplemental Memorandum of Understanding and its detailed plans for sharing custody of the children, we find that the circuit court did not abuse its discretion in adopting the FLM's recommended parenting plan.

### III.

In conclusion, we find that the circuit court did not abuse its discretion in adopting the recommended equitable distribution order and we hold that the *pendente lite* payments

---

**3.** The appellant asserts that the circuit court erred in failing to set aside the FLM's recommendation that the appellant pay the appellee the sum of $110,963.26. The appellant argues that he is unable to make a cash payment because of a downturn in the scrap metal business. The final decree directs the parties' counsel to consult and to agree to a payment schedule for this judgment and to submit an agreed order. The final decree further directs that if the parties are unable to reach an agreement, then each party should submit a written proposal. Because the final decree orders that a payment schedule be determined, this Court will not address the issue.

are by statute designated as alimony. We find that the circuit court did not err in awarding the appellee rehabilitative alimony. Further, we find that the circuit court's adoption of the recommended parenting plan did not constitute an abuse of discretion. For the reasons stated above, we affirm the lower court's rulings.

Affirmed.